THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* ELY PANITZ, Appellant.

First Department, May 28, 1937.

*Harry Sacher*, for the appellant.

*George Tilzer* of counsel [*Herman Fliederblum* with him on the brief; *Samuel J. Foley, District Attorney of Bronx County*], for the respondent.

MARTIN, P. J.   The defendant is a union house painter.   About a week prior to August 29, 1936, a strike was called, as a result of which he, with others, picketed the building of his employer. The strike having been settled in so far as defendant's employer was concerned, the picketing of that building ceased.   The defendant reported at the union headquarters and offered the use of his automobile for conveying union members to such other buildings as they might want to picket.   At the request of the union he took a number of men to Frisby avenue, in the Bronx.   The police ordered the men out of the automobile, searched the car and on the floor of the rumble seat found a bayonet in its scabbard under two placards announcing the strike.   The officer concealed the bayonet and asked who owned the car.   The defendant stated that he did. The weapon was then exhibited and he was asked what he had to say about it.   He replied that he did not know anything about it. On the trial he explained that when he denied ownership he was a little scared.

The appellant contends that Penal Law, section 1898, which provides that possession of the weapons specified in section 1897 is presumptive evidence of intent to use the same unlawfully, applies only to the weapons specifically named in said section.   He urges that because a bayonet is not named in said section there is no presumption against him in connection with his possession thereof. Section 1897, in so far as material, reads as follows:

" 1.   A person who   *   *   *   with intent to use the same unlawfully against another, carries or possesses a dagger, dirk, dangerous knife, razor, stiletto, imitation pistol, machine-gun, sawed off shot-gun, or any other dangerous or deadly instrument, or weapon, is guilty of a misdemeanor."

While not specifically enumerated, a bayonet undoubtedly belongs to the class of weapons designated as " any other dangerous or deadly instrument, or weapon."   The Legislature obviously, instead of attempting to enumerate specifically each and every dangerous weapon, named certain of such weapons and included others of like character, under the *ejusdem generis* rule.   In McKinney's Consolidated Laws, book 1, " Statutes and Statutory

Construction," page 201, it is said: " Where a statute enumerates several classes of persons or things, and immediately following and classed with such enumeration the clause embraces ' other ' persons or things, the word ' other ' will generally be read as ' other such' like,' so that persons or things therein comprised may be read as *ejusdem generis* with, and not of a quality superior to or different from, those specifically enumerated."

The case of *People* v. *Visarities* (220 App. Div. 657), relied upon by the appellant, is directly against him. The defendant was there charged with carrying a bludgeon (a weapon specifically named in section 1897). The court held that an iron bar twenty inches long and three-eighths to one-half inch in diameter was not a bludgeon as charged in the indictment. The court stated, however: " It may be that had the information charged the possession of a dangerous weapon with intent to use, the evidence might in the circumstances disclosed show a commission of the offense referred to in the last portion of section 1897. The fact that the defendant was on a strike and had the iron bar partly concealed under his coat when arrested might be regarded as some evidence of his intent to use."

The presumption to use unlawfully the weapon thus obtains against the defendant, and the only question remaining is whether he rebutted said presumption. In this connection the defendant testified that the bayonet had been given to him by some person whose apartment he had painted; that he tried to match it with another, so that he could place both over a fireplace in his home; that he found another in an antique shop but they asked too much for it, and thereafter he kept it in the car. He did not call as a witness the person from whom he received it or offer any corroboration of his alleged efforts to purchase another. His testimony was evidently rejected by the triers of the fact, which is not surprising in view of defendant's denial of any knowledge of the bayonet at the time of his arrest. From his resort to falsehood, a knowledge of guilty possession may be inferred. In *People* v. *Conroy* (97 N. Y. 62) it is said: " The resort to falsehood and evasion by one accused of a crime affords of itself a presumption of evil intentions, and has always been considered proper evidence to present to a jury upon the question of the guilt or innocence of the person accused."

The foregoing is also an answer to the appellant's second contention, namely, that there is no evidence in the case from which an intent to use the weapon unlawfully can be inferred. It was for the court to determine, in the light of all the facts and circumstances, whether there was such an intention. The prosecution

did not rely entirely upon the defendant's resort to falsehood, as was the case in *People* v. *Nowakowski* (221 App. Div. 521) and *People* v. *Orr* (270 N. Y. 193), cited by the appellant in support of the proposition that too much weight should not be given to the fact that a defendant, when placed in a position of suspicion and danger, may resort to deception in the hope of avoiding the force of such proof. In the case at bar there is, in addition, the fact that the defendant was engaged in picketing activities at the time the weapon was found in his possession.

The judgment should be modified by reducing the sentence to the time already served, and as so modified affirmed.

GLENNON, UNTERMYER and COHN, JJ., concur; DORE, J., dissents.

DORE, J. (dissenting). There was no proof of an intent to use unlawfully the old-fashioned French sword or bayonet found in defendant's car. There was a strike, but there is no evidence or even claim of violence or threats of violence. Defendant, who was in the front of the automobile, did not leave the car; the antique bayonet was found in its scabbard lying on the floor of the rumble seat. Defendant's explanation at the trial was entirely plausible. Neither defendant nor his companions had committed any illegal act whatever. There is nothing from which an inference of intent to use unlawfully can fairly be made.

One of the trial justices dissented from the judgment of conviction. If the conviction is to be sustained, it can be only on the ground on which one of the two justices who voted for conviction sustained it, namely, on the presumption created by section 1898 of the Penal Law.

Possession is made a crime under section 1897, subdivision 1, if intent to use unlawfully against another is proved. The commission of the crime can be thus established not merely with regard to weapons specified in section 1897 but also with regard to " any other dangerous or deadly instrument, or weapon." Under that section, however, proof of intent to use unlawfully is essential. Section 1898 provides, so far as relevant, that possession by any person of any of the weapons " specified in sections eighteen hundred and ninety-seven and eighteen hundred and ninety-seven-a, * * * is presumptive evidence of * * * possessing with intent to use the same in violation of this article." The word " specified " means named definitely or explicitly. (Oxford Dict. vol. IX, p. 549.) Since a sword or a bayonet is not specified in either sections 1897 or 1897-a, the presumption created by section 1898 should not apply to the case at bar. It can only

be so applied by designating as a specification the phrase " any other dangerous or deadly instrument, or weapon " contained in section 1897. Clearly that is not a specification but a generalization of the broadest kind.

It is unnecessary here to consider whether the presumption in section 1898 even with regard to weapons that are specified can be sustained on the ground that there is a rational connection between the facts proved and the ultimate facts sought to be established. It is enough in the case at bar to point out that in any event the presumption is an artificial presumption of the Penal Law, that is, a legislative enactment providing that the triers of the fact may infer the existence of guilt upon the proof of the existence of a fact which would not justify the inference at common law. Words employed in such a statute should be given their ordinary and usual meaning and should not be so construed as to make out a crime by implication. (McKinney's Consolidated Laws, book 1, " Statutes and Statutory Construction," § 137.)

If the construction contended for by the People is adopted, any number of innocent persons who are in possession of antique or rare weapons for decorative purposes are all presumptively guilty of violating section 1897, whether or not the weapons are specified therein and without any proof whatever of unlawful intent. To urge that enforcement officers would not seek to apply the presumption against innocent persons is no answer, as the law does not contemplate that freedom from arrest and criminal prosecution shall depend upon the whim or mere indulgence of prosecuting officials. (*People ex rel. Dixon* v. *Lewis*, 249 App. Div. 464, 467.)

Accordingly I dissent and vote to reverse the judgment of conviction, to remit the bail bond and discharge defendant.

Judgment modified by reducing the sentence to the time already served, and as so modified affirmed.