William J. Regak, J.
Defendant, accused by a single count indictment of the unlawful possession of a hypodermic syringe and hypodermic needle, moves to dismiss the indictment at the conclusion of the People’s case. The ground advanced in support of the motion presents a clear and focused attack upon the constitutionality of subdivision 3 of section 1747-d of the Penal Law.
Originally derived from the Uniform Narcotic Drug Act adopted by the National Conference of Commissioners on Uniform State Laws in 1932 (see Uniform Laws Annotated, vol. 9B, p. 274), subdivision 3 of section 1747-d of the Penal Law (added by L. 1952, ch. 91) underwent important revision by chapter 692 of the Laws of 1956. The 1956 amendment, seemingly precipitated by the understandable lamentations of prosecuting and police agencies that the statute in its original terms presented insurmountable problems of proof (see Memorandum of Legislative Representative of the City of New York, 1956 N. Y. Legis. Annual, p. 32) resulted in the complete excision of the element of criminal intent and hence purported to subject an individual to penal consequences by the mere fact of possession. Notably, this extraction affected only that portion of the statute which addressed itself to the event of possession of a hypodermic syringe or hypodermic needle, leaving unmolested the immediately following proscription against “ any other instrument or implement adapted for the administering of narcotic drugs.”. As to such “other instrument or implement,” the burden remains to demonstrate that such are “possessed for that purpose.”
The statute in its present language recites as follows:
“ It shall be unlawful for any person or persons, except a duly licensed physician, dentist, veterinarian, nurse, podiatrist, hospital, sanitarium or other medical institution, or a resident physician or interne of a hospital, sanitarium or other medical institution, or those engaged in the regular business of dealing in medical, dental and surgical supplies, operating a clinical laboratory, maintaining a registered pharmacy or drug store, or maintaining an undertaking establishment, to have under control or possess, a hypodermic syringe or hypodermic needle, or any other instrument or implement adapted for the administering of narcotic drugs which other instrument or implement is possessed for that purpose, unless such possession be obtained upon a valid written prescription from, and such use be authorized or directed by, a duly licensed physician or veterinarian. For the purposes of this subdivision no such prescription shall be valid, which has been outstanding for more than one year.”
*986 Defendant asserts that the legislatively created conclusive presumption of illegality of use operates to deprive an accused of the right to challenge the premise, denies him a fair opportunity to be heard and is hence arbitrary, unreasonable and violative of the due process clause of the Fourteenth Amendment to the United States Constitution. The approach to this challenge perforce raises two fundamental questions which together constitute the long-accepted test of statutory validity: Does the police power of the State extend to the evil with which the legislation purports to cope? Has that power been reasonably exercised? (People v. Griswold, 213 N. Y. 92.)
Without question, the notorious and ravaging effect of illicit narcotic drug traffic presents a societal menace properly the subject of legislative suppression. (See Second Interim Report of the State of New York Joint Legislative Committee on Narcotic Study, N. Y. Legis. Doc., 1958, No. 16.) Indeed, the legislative effort to curb this devastating and difficult problem is highly praiseworthy and merits the active indorsement and support of the entire citizenry. There can be no dispute then as to the power of the State to wage itself against the evils of narcotic drug traffic.
The second half of the test, however, is alive with difficulties. Although it is well appreciated that the rights of an individual, secured by the due process clause of the Fourteenth Amendment to the United States Constitution, are subject to the exercise of the regulatory powers of government and must yield to the right of the State to enact laws under its police power to protect the general health, welfare and safety of its citizens (People v. Brown, 175 Misc. 989, 993, affd. 287 N. Y. 154) the judiciary must be ever alert to insure that that power be not exercised in an arbitrary and imreasonable fashion.
The precise subject of the portion of the statute under consideration is an ordinary medical instrument whose innocent uses probably exceed the guilty. (See 34 N. Y. U. L. Rev. 1371.) That the classes of persons specifically excepted from the operation and criminal sting of the statute does not embrace the entirety of those who may put a hypodermic syringe or hypodermic needle to some perfectly proper occupational use, one need only look to the fields of botany, biology, genetics and tree surgery, to name but a few. To therefore render incontrovertible the presumption of illegality of purpose by virtue of possession alone of this inherently innocuous instrument is to sanction a proposition which is clearly predicated upon a fact whose verity runs counter to the universal experience. It must be recalled that we are not here dealing with an object which *987 is inherently dangerous (People v. Persce, 204 N. Y. 397) or sinister (People v. Adams, 176 N. Y. 351) wherein there is sufficient relationship between the fact proved and the crime presumed. Indeed it is the precise failing of this legislation that the long gap between presumption and conclusion is not adequately bridged by the nature of the object whose use is sought to be suppressed. A tampering with the fundamental rights of an individual cannot be countenanced where, as here, nothing is demonstrated save possession of an ordinary and common instrument. It is the considered opinion of this court that given the existence of the narcotic drug evil and the power of the Legislature to reasonably cope with this problem, a statute which seeks, without more, to conclusively equate possession of an object not inherently dangerous, noxious or harmful with illegality of purpose is unreasonable and therefore constitutionally infirm.
Insofar as this court has been able to determine, the issue at bar has been the subject of examination by a single other jurisdiction possessed of like legislation. In the ease of State v. Birdsell (235 La. 396, 411) a similar statute was considered and stricken as inconsistent with the due process protections of the Federal Constitution. The court there held that “ Inasmuch as an accused * * * cannot show (as a defense) that his possession of a hypodermic syringe or needle * * * is for harmless use such statutory provision, in our opinion, is unreasonable and hence unconstitutional.” Though not to be considered binding authority, this court is loathe to discard the careful and analytical reasoning of the highest court of a sister State.
This court is not unaware that the case of People v. Salerno (17 Misc 2d 535) decided by the Court of Special Sessions of the City of New York in 1959, reaches a conclusion in apparent conflict with that here drawn. Suffice it to say that it is believed that the learned court in Salerno did not address itself to the exact ground advanced herein and that at all events, this court need not consider itself inextricably bound by a court of equal or inferior jurisdiction. (People v. Kearns, 168 Misc. 264.)
It has been suggested by the People that this court, exercising its original jurisdiction, should be reluctant to declare unconstitutional a statute enacted in the exercise of the police power of the State. With this proposition there is no quarrel. However, such forbearance cannot survive a demonstrable conclusion that the statute under scrutiny is clearly repugnant to constitutional doctrine. (People ex rel. Battista v. Christian, 131 Misc. 411, affd. 249 N. Y. 314.)
*988 My conscience does not permit yielding to the appeal of necessity. If the consequence of this ruling makes law enforcement more troublesome and uncertain, one need only to consult the wisdom of the framers of our Constitution to justify the placing of obstacles in the path of arbitrary attachment of criminal responsibility.
For the reasons assigned, I am constrained to hold that that portion of subdivision 3 of section 1747-d of the Penal Law which imposes criminal liability through the creation of a conclusive and irrebuttable presumption of guilt based on mere possession of an instrument used essentially for useful and necessary purpose is an unreasonable exercise of the police power of the State, is obnoxious and offensive to the universal sense of justice and is hence unconstitutional as violative of the due process clause of the Fourteenth Amendment to the United States Constitution.
It is further ordered that the indictment be and it is dismissed.